## PEOPLES BANK OF MANSFIELD *v.* INSURANCE COMPANY OF NORTH AMERICA.

1. Where one borrows money and secures the payment thereof by deed, and insures the house on the land conveyed by the deed, with loss payable to the creditor, and the insurance policy provides for subrogation pro tanto, and the house is burned, after which the insurance company pays the creditor the amount of the debt, taking a transfer of the debt and the security, the insurance company is subrogated to the rights of the grantee in the security deed to the extent of the debt paid.

2. Where, in violation of the terms of a fire-insurance policy, the insured afterwards procured additional insurance, parol evidence is inadmissible to show that the company assented to the additional insurance and waived the provision in the policy prescribing the conditions thereof.

3. There was no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demanded a verdict for the claimant; and the court did not err in so directing.

FEBRUARY 16, 1917.

Claim to land. Before Judge Smith. Newton superior court. September 21, 1915.

Two mortgage fi. fas. in favor of the Peoples Bank of Mansfield, Georgia, and against L. R. Sams, were levied upon certain described real estate as the property of Sams. The Insurance Company of North America filed a claim to the property. Upon issue joined the case was tried, and at the conclusion of the evidence each party moved that the court direct a verdict in its favor. The court overruled the motion of the plaintiff, and sustained that of

the claimant; whereupon the plaintiff excepted. It appeared from the evidence that on October 16, 1912, the Insurance Company of North America issued to Sams a policy of insurance upon his dwelling-house for a term of five years. .On November 14, 1912, Sams executed to the Calvert Mortgage and Deposit Company a loan deed to the property in dispute, upon which the dwelling was located, and received from that company a bond for title. On January 17, 1914, the dwelling was destroyed by fire. The insurance company paid the debt of the assured to the mortgage company. On the back of the security deed was the following transfer, dated December 12, 1914, and signed by the Calvert Mortgage Company: "For value received we hereby transfer, assign, and convey unto the Insurance Company of North America, of Philadelphia, Penn., its successors and assigns, all of our right, title, and interest, power and option in, to, and under the within deed to secure debt, as well as the land described therein, and the indebtedness secured thereby."

The provisions of the policy pertinent to this case are as follows: "This policy is made and accepted subject to the following stipulation and condition printed on the back hereof, together with such other provision, agreements, or conditions as may be endorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provision and condition no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. This insurance is effected subject to the following conditions, which are hereby made warranties by the assured and are accepted as parts of this contract: No additional insurance permitted, unless the amounts are inserted by agent of this company in the blank spaces following, viz: $————on dwelling. This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on

property covered in whole or in part by this policy." Attached to the insurance policy was what is known as the New York standard mortgage clause, which contained, among other provisions, the following: "Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owners, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all of such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim." The date of the mortgage clause attached to the policy was November 20, 1912.

*Rogers & Knox,* for plaintiff.

*Smith, Hammond & Smith* and *C. C. King,* contra.

GILBERT, J. (After stating the foregoing facts.) The assignments of error raised three issues. (1) Did the payment to the Calvert Mortgage Company by the Insurance Company of North America of the amount of the debt due the mortgage company by the assured subrogate the insurance company to the rights of the mortgage company; or was such payment simply an extinguishment of the debt due the mortgage company by the assured? (2) Was the plaintiff in fi. fa., under the terms of the policy, estopped from showing by parol evidence that the insurance company had assented to the procurement of additional insurance by the assured, and had thus waived the provision making the policy void in such event? (3) The plaintiff in fi. fa. and the claimant each moved the court to direct a verdict in accord with their respective contentions. The court overruled the motion of the former, and directed a verdict for the latter. Was this erroneous?

1. The plaintiff in error contends, because the mortgagor, Sams, paid the insurance premium, that the policy was for the benefit of the assured, and therefore, when the insurance company paid to the mortgagee the amount due by Sams, his debt was extinguished; that, the debt being paid, the title to the property reverted to the assured, who was the defendant in fi. fa., and there-

fore the property was subject to the debt of the Peoples Bank of Mansfield, Georgia, the plaintiff in fi. fa. The case in this respect is one of first impression in this State, as is stated by counsel. In support of the above contention quite a number of authorities were cited as upholding the principle, because of their similarity in some respects. The leading case thus cited is King *v.* State Mutual Fire Insurance Co., 7 Cush. (Mass.) 1 (54 Am. D. 685), where a large number of cases are collated, and discussed in the learned opinion of Chief Justice Shaw, and in the notes appended. Among these are all of the other cases cited by the plaintiff in error, and hence it would serve no useful purpose to enter upon a separate discussion of them here. In the opinion above mentioned the court said: "Nothing is so likely to mislead as a simile." Thus we find that the leading case and others cited by plaintiff in error, while similar, are not identical in the controlling feature of the insurance contract, and would be misleading unless distinguished.

The policy in the instant case contains a clause known as the New York standard mortgage clause. This clause in express terms provides for subrogation pro tanto, and states the conditions therefor. It also provides that no subrogation shall impair the right of the lien creditor to whom loss may be payable, to recover the full amount of his claim. The last-named provision simply leaves the matter of liability on the policy between the insurer and the insured in case of loss. The creditor is paid, and, according to the insurance contract, is eliminated from the matter about which he has no further concern. All legal rights of the insurer and the insured remain unimpaired.

The cases cited by the plaintiff in error have reference to insurance policies containing no provision for subrogation, and hence the similarity fails on the vital point. In May on Insurance (4th ed.), § 457C, the author states broadly, "If an insurance company pay a mortgagee the loss, it is subrogated to the rights of the mortgagee, and may proceed against the mortgagor on the mortgage." And further, "An agreement in the policy that the insurance as to the interest of a mortgagee shall not be avoided by any act of the mortgagor, but that in case a loss occurs after action of the mortgagor which causes forfeiture as to himself the company shall, on paying the loss to the mortgagee, be subrogated to his rights un-

der the mortgage, to the extent of such payment, and may pay the whole debt and require an assignment of the mortgage, is valid and will be sustained by the courts." The clause in the policy involved in the present case seems to have been drawn expressly to meet by contract the decisions in some of the earlier cases. Allen *v.* Watertown Fire Insurance Co., 132 Mass. 480. The trial court was correct in holding that the insurance company was subrogated to the rights of the Calvert Mortgage Company.

2. The policy of insurance being valid when issued, and the insured afterwards, in violation of the terms of the policy, having procured additional insurance without complying with the terms of the policy, the plaintiff in fi. fa. was estopped from showing by parol evidence that an unauthorized agent of the company had assented to the procurement of additional insurance, and had waived the provision in the policy, unless it was shown that the assured had complied with the terms of the policy in that respect. *Beasley* v. *Phœnix Insurance Co.,* 140 *Ga.* 126 (78 S. E. 722). Where a policy of fire insurance contained a stipulation that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance," and the insured at the time of the issuance of this policy had additional insurance in violation of the terms of the new policy, which fact was known to the agent issuing the new policy, the rule would be otherwise than as above stated. Limitations in an insurance policy upon the authority of the agent of the company to waive the conditions of the contract of insurance are to be treated as referring to waivers made subsequently to the issuance of the policy. *Mechanics &c. Ins. Co.* v. *Mutual Real Estate &c. Association,* 98 *Ga.* 262 (25 S. E. 457); *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92). The court did not err in rejecting parol evidence offered for the purpose of showing that the agent of the company had waived the terms of the policy in respect to additional insurance.

3. There was no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demanded a verdict for the claimant. Civil Code (1910), § 5926. The court, therefore, did not err in so directing.

*Judgment affirmed. All the Justices concur.*