NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ELLIOTT J. GLASSER, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

M&O AGENCIES, INC., an Arizona corporation; RYAN JAMES
BRADLEY and KRISTINA BRADLEY, husband and wife,
*Defendants/Appellees/Cross-Appellants*.

No. 1 CA-CV 14-0708
FILED 12-15-2015

Appeal from the Superior Court in Maricopa County
No.  CV2011-020557
The Honorable Randall H. Warner, Judge

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Law Office of David Dow, Phoenix
By David W. Dow
*Counsel for Plaintiff/Appellant/Cross-Appellee*

The Hassett Law Firm, PLC, Phoenix
By Myles P. Hassett, Julie K. Moen, Jamie A. Glasser
*Counsel for Defendants/Appellees/Cross-Appellants*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia A. Orozco joined.

---

**P O R T L E Y**, Judge:

¶1        Elliott J. Glasser appeals the summary judgment granted to M&O Agencies, Inc., Ryan James Bradley and Kristina N. Bradley (collectively, "Mahoney") dismissing his claims for breach of contract, negligence, and negligent misrepresentation.  Mahoney cross-appeals the denial of its motion for attorneys' fees.  For the following reasons, we reverse the summary judgment granted to Mahoney, affirm the denial of attorneys' fees to Mahoney, and remand for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Glasser bought a large commercial property in March 2010 (the "McDowell Property") that was previously an automobile dealership. Glasser's employees began cleaning and making repairs at the McDowell Property, but Glasser did not lease the property or occupy it himself.

¶3        Glasser, through his insurance agent Mahoney, added the McDowell Property as a scheduled location on his existing commercial insurance policy (the "Policy") from Great American Insurance Company, which covered the McDowell Property with property and liability insurance.  In April 2010, and at the direction of an employee of Glasser's business, Mahoney instructed Great American to delete the property coverage for the McDowell Property.

¶4        On approximately July 6, 2010, Glasser discovered theft and vandalism at the McDowell Property, and submitted a claim for the loss to Great American.  Great American denied the claim because the Policy did not cover property damage at the McDowell Property and the property had been vacant for more than 60 days before the loss, a vacancy exclusion term under the Policy.

¶5        Glasser filed this lawsuit against Mahoney alleging it breached the agreement with Glasser by failing to obtain appropriate insurance coverage for the McDowell Property; failed to exercise reasonable care, skill, and diligence to secure and maintain appropriate insurance coverage for Glasser's real properties; and negligently misrepresented that it had secured appropriate insurance coverage for Glasser's real properties, including the McDowell Property.

¶6        Mahoney moved for summary judgment on the grounds that Glasser had produced no evidence that the Policy would have covered the loss even if it had been in effect and he, therefore, could not prove that Mahoney's allegedly negligent conduct caused him any damage.[1] Specifically, Mahoney argued that the terms of the Policy excluded coverage for theft and vandalism at the McDowell Property because it had been vacant for the 60 days preceding the loss.  In response, Glasser maintained that an exception to the vacancy exclusion for buildings under "renovation" applied because his employees had been readying the building to serve as his business headquarters by re-keying the locks, installing fencing and landscaping, removing shelving, signs, logos, trash, and other debris, testing light fixtures and changing light bulbs, cleaning the carpet and touching up the paint, patching holes in the walls, repairing minor plumbing leaks, and repairing broken doors and windows.[2] Mahoney argued, however, that Glasser's activities at the McDowell Property constituted routine maintenance and repair, not renovation.

---

[1] Mahoney also asserted that Glasser could not sustain a breach of contract claim because no contract existed between the parties and challenged whether Glasser was the proper party in interest.  The superior court did not address these arguments, and we do not consider them on appeal because Mahoney does not argue that they constitute alternative grounds to affirm the judgment.  *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) (issues not clearly raised and argued in a party's appellate brief are waived).

[2] Glasser also hired a contractor to perform roof and ceiling repairs at the McDowell Property, but there was no evidence that those repairs occurred before July 6, 2010.  Similarly, Glasser's suggestion that his employees removed hydraulic lifts from the premises during the relevant period, is not supported by the evidence.

¶7             The superior court granted summary judgment for Mahoney, ruling as a matter of law that there was insufficient evidence for a jury to find that the McDowell Property was under renovation at the time of the loss. The court determined that the evidence only supported an inference that the McDowell Property was being cleaned, repaired, and maintained and such acts, as a matter of law, did not constitute "renovation." The court denied Mahoney's request for an award of attorneys' fees pursuant to Arizona Revised Statutes ("A.R.S.") section 12-341.01,[3] ruling fees were not available because the gravamen of the action was negligence/malpractice and, therefore, the action did not arise out of contract as required for an award under the statute.

¶8             Glasser appeals the judgment, and Mahoney cross-appeals the court's denial of its request for attorneys' fees. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## ISSUES

¶9             Glasser argues the superior court erred as a matter of law by granting summary judgment because he established a genuine issue of material fact regarding whether his activities at the McDowell Property constituted renovation. Mahoney contends the court erred in ruling that this action does not arise out of contract for purposes of an award of attorneys' fees pursuant to A.R.S. § 12-341.01.

## DISCUSSION

### I.  Coverage Ruling

¶10           The Policy excludes coverage for theft or vandalism occurring at a building that has been vacant for more than 60 consecutive days before the loss. As relevant, the Policy states that a "building is vacant unless at least 31% of its total square footage is: (i) rented to a lessee . . . and used by the lessee . . . to conduct its customary operations; and/or (ii) used by the building owner to conduct customary operations." The Policy provides that "[b]uildings under construction or renovation are not considered vacant." Glasser contends he presented sufficient evidence to raise a material question of fact regarding whether the McDowell Property was

---

[3] We cite the current version of all applicable statutes unless revisions material to this decision have occurred since the relevant events.

under renovation such that the Policy's vacancy exclusion would not apply and his loss would have been covered.[4]

¶11     A court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In an insurance coverage case, the insurer has the burden to establish that an exclusion applies, and the insured then has the burden to establish an exception to the exclusion. *Hudnell v. Allstate Ins. Co.*, 190 Ariz. 52, 54, 945 P.2d 363, 365 (App. 1997). Because Glasser does not dispute that the McDowell Property was vacant at the time of the loss, we focus only on whether he produced sufficient evidence to allow a reasonable jury to find that the renovation exception to the vacancy exclusion applies in this case. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 117-19, ¶¶ 22-26, 180 P.3d 977, 982-84 (App. 2008). We view the evidence in the light most favorable to Glasser, the non-moving party, and determine de novo "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 485, ¶ 10, 167 P.3d 1277, 1280 (App. 2007).[5]

¶12     The superior court ruled the evidence would not support a finding that the McDowell Property was under renovation at the time of the loss because, as a matter of law, cleaning, repairing, and maintaining the

---

[4] Glasser also argues the superior court erred by failing to consider whether the McDowell Property was excepted from the vacancy exclusion because it was "under construction." We do not consider the argument because Glasser did not raise it in the superior court. *Napier v. Bertram*, 191 Ariz. 238, 239, ¶ 6, 954 P.2d 1389, 1390 (1998) ("Ordinarily, courts should not consider new factual theories raised for the first time on appeal from summary judgment or judgment on the pleadings.").

[5] Glasser's citation to Couch on Insurance § 94:108, is not to the contrary. The full text of the relevant provision states: "Whether or not insured premises have become vacant, unoccupied, or the like within the meaning of a forfeiture provision in an insurance policy is usually a question for the jury, *at least where the evidence is such that it might reasonably be supposed that the minds of unprejudiced persons of ordinary intelligence might differ about it, that is, when the evidence leaves the answer in doubt but is sufficient to support a finding either way.*" 6A Steven Plitt et al., *Couch on Insurance* § 94:108, Westlaw (database updated Dec. 2015) (emphasis added).

property did not constitute "renovation." Glasser argues that whether "renovation" was occurring is a factual issue that must be decided by a jury. Mahoney maintains that under the word's plain meaning, no reasonable juror could conclude that Glasser's activities at the McDowell Property constituted "renovation."

¶13 The interpretation of an insurance contract is a question of law for the court and any ambiguity, particularly one that involves an exclusionary clause, will be construed against the insurer. *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 324-25, 842 P.2d 1335, 1338-39 (App. 1992). However, the absence of a definition does not render a term ambiguous and we will not read an ambiguity into an insurance policy in order to avoid the harsh result of an uncovered loss. *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24, 183 P.3d 513, 518 (2008); *Pawelczyk v. Allied Life Ins. Co.*, 120 Ariz. 48, 51-52, 583 P.2d 1368, 1371-72 (App. 1978). Instead, we give undefined terms their usual and ordinary meaning. *Farmers Ins. Exch. v. Loesche*, 17 Ariz. App. 421, 423, 498 P.2d 495, 497 (1972); *cf. United Dairymen of Ariz. v. Rawlings*, 217 Ariz. 592, 596, ¶ 13, 177 P.3d 334, 338 (App. 2008) (noting a court may refer to an established and widely used dictionary to determine a word's usual and ordinary meaning).

¶14 Webster's defines the term "renovate" as "(1) to make new or like new; to clean up, replace worn and broken parts in, repair, etc.; to restore to good condition; (2) to refresh; to revive." Webster's New Universal Unabridged Dictionary 1531 (2d ed. 1983). Similarly, the American Heritage Dictionary defines this word as "(1) [t]o restore to an earlier condition, as by repairing or remodeling.[6] (2) [t]o impart new vigor to; revive." American Heritage Dictionary of the English Language 1487 (5th ed. 2011).

¶15 Based on these definitions, a question of fact exists regarding whether the activities of Glasser's employees at the McDowell Property during the relevant time qualified as "renovation."[7] The evidence showed that two of Glasser's employees were at the McDowell Property every day

---

[6] The word "remodel" is defined in the same dictionary as "[t]o make over in structure or style; reconstruct." American Heritage Dictionary of the English Language 1486 (5th ed. 2011).

[7] The Policy states that "[b]uildings under construction or renovation are not considered vacant." Because the Policy uses the term "under construction or renovation," we presume that "renovation" is different and not synonymous with construction.

after the purchase making changes and repairs to render the property acceptable business headquarters. Although Mahoney contends that these activities were simply routine cleaning and maintenance, a reasonable jury could find that they satisfy the usual and ordinary definition of "renovation," which includes cleaning and making repairs. *See* Webster's New Universal Unabridged Dictionary (2d ed. 1983); American Heritage Dictionary of the English Language (5th ed. 2011). If Great American and Glasser intended that the Policy's renovation exception would apply only to substantial reconstruction activities, rather than minor repairs or cleaning, they were free to specify that meaning in the Policy. However, absent such a definition, we give the undefined term its usual and ordinary meaning and determine that reasonable jurors could find that Glasser's activities at the McDowell Property during the relevant time constituted "renovation."

¶16        Nevertheless, Mahoney argues courts from other jurisdictions have read similar policy language in conjunction with the overall purpose of a vacancy exclusion (to exclude coverage for those buildings that might invite liability and damage) and have refused to find an exception to a vacancy exclusion when the insured's activities at the property were not substantial and continuing. *See TRB Invs., Inc., v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 30 (2006) ("When there is substantial construction activity on the premises, the risk of loss becomes roughly equivalent to that of an occupied building, thus giving the insurer the benefit of its prior risk assessment."); *Vennemann v. Badger Mut. Ins. Co.*, 334 F.3d 772, 774 (8th Cir. 2003) ("Sporadic nighttime visits and remodeling projects do not 'convey the appearance of residential living' and thus, do not constitute effective measures against vandalism."); *Langill v. Vermont Mut. Ins. Co.*, 268 F.3d 46, 48 (1st Cir. 2001) (holding occasional work activity and a sparse inventory of objects did not approximate an inhabited abode or "convey the appearance of residential living."); *Catalina Enters. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 64-67 (4th Cir. 1995) (holding vacancy exclusion applied because building contained nothing to indicate that it was occupied or being used for its normal purpose – industrial storage); *Will Realty Corp. v. Transp. Ins. Co.*, 492 N.E.2d 372, 373 (Mass. App. 1986) (ruling exception to vacancy exclusion for "buildings in due course of construction" could only be applied to substantial continuing activities). Because none of the insurance policies at issue in those cases involved a "renovation" exception to a vacancy exclusion, we do not find their reasoning persuasive. *See TRB Invs., Inc.*, 40 Cal. 4th at 23-24 (vacancy exclusion and exception for "[b]uildings under construction"); *Vennemann*, 334 F.3d at 773 (vacancy exclusion and exception for building "being constructed"); *Langill*, 268 F.3d at 47 (vacancy exclusion); *Catalina Enters.*, 67 F.3d at 64-65 (vacancy exclusion and

exception for a "building in process of construction"); *Will Realty Corp.*, 492 N.E.2d at 373 (vacancy exclusion and exception for "buildings in due course of construction"). Moreover, even if we followed the reasoning, under the circumstances of this case we would still determine that a fact question exists regarding whether Glasser's activities at the property were "substantial and continuing." *See Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008 (summary judgment is only appropriate when no reasonable finder of fact could agree with the position advanced by the non-moving party).

¶17 Accordingly, even though the activities at the McDowell Property might not be what is ordinarily envisioned by the word renovation, there is a question of fact under the Policy. As a result, we reverse the ruling for Mahoney on the grounds that, even if it had remained in effect, the Policy would not have covered Glasser's loss because of the vacancy exclusion.

## II. Attorneys' Fees

¶18 Mahoney argues on cross-appeal that the superior court erred by ruling it was not entitled to an award of attorneys' fees pursuant to A.R.S. § 12-341.01 because Glasser's action did not arise out of contract.[8] In light of our ruling vacating summary judgment, Mahoney would not be entitled to an award of fees as the "successful party" at this time even if this action did arise out of contract for purposes of A.R.S. § 12-341.01. However, because the superior court made a legal ruling regarding the applicability of A.R.S. § 12-341.01 and this issue is likely to recur on remand, we address Mahoney's argument in order to provide guidance to the trial court and the parties. The applicability of § 12-341.01(A) is a question of statutory interpretation that we review de novo. *Ramsey Air Meds., L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, ¶ 12, 6 P.3d 315, 318 (App. 2000).

¶19 Section 12-341.01 permits an award of fees only in actions that arise out of contract and absent a special contractual agreement or undertaking between those in the professional relationship, a professional malpractice action does not "arise" from contract, but rather from tort. *Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 524, 747 P.2d 1218, 1223 (1987). "When the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not

---

[8] Because the court ruled on the legal grounds that Mahoney was not entitled to an award of attorneys' fees under A.R.S. § 12-341.01, we do not consider Mahoney's alternative argument that the court abused its discretion by denying Mahoney's request for fees.

contract. . . . The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Ramsey Air Meds.*, 198 Ariz. at 15-16, ¶ 27, 6 P.3d at 320-21. Although Glasser pled both contract and tort claims against Mahoney, the crux of its action was based on the legal duty Mahoney owed Glasser by virtue of the parties' relationship. *Wilks v. Manobianco*, 237 Ariz. 443, 445, ¶ 6, 352 P.3d 912, 914 (2015) ("Under Arizona's common law, insurance agents owe a duty of reasonable care when obtaining insurance on behalf of their clients."). Accordingly, the superior court correctly determined that Glasser's claims did not arise out of contract for purposes of A.R.S. § 12-341.01. *See Ramsey Air Meds.*, 198 Ariz. at 15-16, ¶ 27, 6 P.3d at 320-21.

**¶20** Glasser requests an award of attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12-341 and 12-349. As discussed, A.R.S. § 12-341.01 does not apply to this action. In addition, Glasser is not entitled to fees in this case under A.R.S. § 12-349 because we do not find Mahoney's cross-appeal was brought without substantial justification or for the purposes of delay or harassment. As the prevailing party on appeal, Glasser is entitled to an award of his costs upon his compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶21** For the foregoing reasons, we reverse the superior court's judgment, but affirm the denial of attorneys' fees to Mahoney, and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED: ama